WALTER L. FINCH V. UNITED STATES.

[*Opinion Filed July 20, 1893.*]

1. PROBATE JUDGE.—*Authority to Take Evidence.*—Art. 2, Chap. 2, Stat. of Oklahoma, which authorizes the probate judge, on a commission issued from the local land office, to take the evidence of witnesses to be used in cases pending in such land office, was ratified by Act of congress and is valid; and the crime of perjury, as defined in § 5392, R. S. of the United States, may be committed by false swearing before such probate judge.

2. EXAMINATION OF JUROR.—*Perjury.*—Perjury may be committed by a juror in his examination on his *voir dire*, touching his competency as such juror, if he swears falsely as to having formed and expressed an opinion as to the guilt or innocence of the defendant on trial in the case in which he is called as a juror.

3. PERJURY.—*Against what Law.*—If a juror, called and sworn on his *voir dire*, in a prosecution for perjury on the Federal side of the district court, swears falsely touching his competency as such juror, his offence is perjury against the laws of the United States; and he may be prosecuted under § 5392, R. S. of the United States.

*Appeal from the District Court of Logan County, Hon. E. B. Green, Judge. Affirmed.*

*H. R Thurston*, for Appellant.

*Horace Speed*, for Appellee.

The opinion of the court was delivered by

DALE, J.:—This is an appeal from the United States district court, sitting in Logan county. The action in that court was brought by the United States against Walter L. Finch, under § 5392 of the Revised Statutes of the United States, charging the defendant with the crime of perjury.

The action was prosecuted on two counts as shown by the indictment filed in the cause.

The case was tried and defendant convicted on both counts of the indictment at the September term, 1892.

Upon such conviction, said defendant was by the court
sentenced to imprisonment in the penitentiary for a
term of two years on the first, and for four years on the
second count.

Appeal was duly perfected and defendant brings this
case here and asks a reversal of the judgment of the
lower court upon the following grounds.

"*First.* Because the first count of the indictment
has no allegation that John Backes had an entry on the
land described in the indictment.

"*Second.* The facts are insufficient, as stated in the
first count of the indictment, to constitute any public
offence against the laws of the United States.

"*Third.* Because the contest out of which arose the
assignment of perjury, in the first count of the indict-
ment, is yet undetermined by the officers of the land
department.

"*Fourth.* The facts stated in the second count of
the indictment do not state facts sufficient to constitute
any public offence known to the laws of the United
States.

"*Fifth.* The court erred in overruling the applica-
tion made by the defendant for a continuance."

The first count in the indictment charges the defend-
ant with having testified falsely before one John S.
Calhoun, probate judge of Logan county, Oklahoma.
That a land contest was pending before the United
States land office at Guthrie, in said Logan county,
wherein one Willard P. Mitchell sought to have the
homestead entry of one John Backes cancelled. That
a commission to take the deposition of the defendant,
Finch, was duly issued by the register of the land
office, which commission was directed to the probate
judge of Logan county. That the defendant, Finch,
appeared before said probate judge, was duly sworn,
and testified that John Backes, defendant in the land
contest, entered the Territory of Oklahoma prior to 12
o'clock, noon, on April 22, 1889. It is also alleged in

the indictment that the question as to whether or not Backes entered the Territory of Oklahoma prior to 12 o'clock, noon, of April 22, 1889, was material to the issue involved in the trial of the land contest ; and it charges the defendant with having sworn falsely with reference to such issue.

The second count charges the defendant with having upon his examination, touching his qualifications as a juror in the case of the *United States v. Charles W. Quisenberry*, sworn falsely with reference to his knowledge of the facts and parties to said cause. That said cause was pending in the United States district court, sitting in Logan county, Oklahoma; that said defendant when examined on his *voir dire*, testified that he knew nothing whatever about the case pending, that he had no prejudice or feeling in the case, that he had not formed or expressed any opinion as to the guilt or innocence of said Quisenberry, etc. It is alleged further in the indictment that all the statements so sworn to were false.

Considering the assignments of error as they are presented, we find that the first ground of error as alleged is not well taken. It is claimed that the indictment had no allegation that John Backes had an entry on the land described in such indictment. Even if this were essential to the validity of the indictment, an examination of such instrument shows that such an allegation appears with sufficient certainty to apprise the defendant of that fact. Examining the first count of the indictment, the following language will be found:

"A certain land contest was pending, wherein one Willard P. Mitchell sought to have the homestead entry of one John Backes, for the northeast quarter of section twenty-one," etc., "cancelled and forfeited to the United States."

Here is an express allegation to the effect that the land contest was instituted for the purpose of having the entry of John Backes cancelled. The entry is described as having been made upon a certain tract of land. And in our opinion, if it were necessary to set forth the fact that Backes had an entry on the land described in the indictment, the same sufficiently appears therein.

The second ground of error as alleged calls into question the validity of Art. 2, Chap. 21 of the Statutes of Oklahoma, and the subsequent Act of congress found in § 17, Chap. 543, ratifying the same. The legislature of Oklahoma passed a law, which took effect Dec. 2, 1890, and which among other things, provided for the issuing of commissions from the different land offices in this Territory to take the depositions of witnesses. Such commission to be directed to a district judge, or commissioner of depositions in the district court, or to the judge of a county or probate court. The act further provides that the officer to whom the commission is directed shall have power to compel the attendance of witnesses, and to compel them to testify, and shall have power to administer an oath to the witnesses. And further provides for reducing the testimony to writing, and the transmission of the same to the land office from which the commission issued. Clause 3, § 17, Chap. 543, found in the supplement to the Revised Statutes of the United States, which act was passed and took effect March 3, 1891, reads as follows:

"Provided. That in addition to the jurisdiction granted to the probate courts and judges thereof in Oklahoma Territory by legislative enactments, which enactments are hereby ratified, the probate judges of said Territory are hereby granted such jurisdiction in townsite matters, and under such regulations, as are provided by the laws of the state of Kansas."

By the passage of this ratifying act congress clearly intended to give to the act of the legislature the same force and effect as if passed originally by congress. If as contended by appellant the legislature of Oklahoma had no power to pass the law in question, the act of congress ratifying the same gave it all the vitality it would have had if it had first found expression in con-- gress. Beyond question the law-making power may pass a statute giving the force of law to an instrument, previous statute or document, without setting it forth at length. It is sufficient if it can be made certain. (Lawson's Rights and Remedies, Vol. 7, § 3758, and authorities there cited.) This has frequently been done· by congress, and no further example need be cited than· § 11 of our organic act. This being true, it will be seen that the statute of Oklahoma, which makes pro- vision for the taking of testimony of witnesses before· a probate judge in cases pending before United States land offices, is not alone a law of Oklahoma, but such statute is a law of congress. And it further follows that false swearing by the defendants as set out in the· indictment is clearly within § 5392, the law under which the indictment was framed.

The third ground upon which a reversal is asked,. may be dismissed by stating that it is not necessary that the land contest should have been determined by the land department, before a prosecution for perjury may be instituted. The crime is complete when the act is done, and has no relation whatever to the result of the contest for the land.

The fourth ground for the reversal, as stated, raises. the question as to whether or not the crime of perjury· will lie against a person who on his *voir dire* testifies. falsely. Under the laws of congress there is no ex-- press provision prescribing an oath for jurors. Section,

800, Chap. 15, Revised Statutes of the United States, provides that:

"Jurors to serve in the courts of the United States, in each state respectively, shall have the same qualifications as jurors of the highest court of law in such state may have at the time when such jurors for services in courts of the United States are summoned. And they shall be designated by ballot, lot, or otherwise, according to the mode of forming such juries then practiced in such state court, so far as such mode may be practicable by the courts of the United States, or the officers thereof. And for this purpose, the said courts may, by rule or order, conform the designation and impaneling of juries, in substance, to the laws and usages relating to jurors in state courts, from time to time in force in such state."

In the foregoing we find an express direction by congress to the United States courts throughout the territory of this government to impanel juries according to laws and usages of the locality where the case is tried. That the section above referred to applies as well to territories as states cannot be questioned. It is clearly intended to apply to the empaneling and selection of juries, in all United States courts.

For the purpose of trying United States cases, or crimes against the laws of the United States, the court sitting in the case where the perjury is alleged to have been committed was a United States court, made such by the organic act of this territory. Under § 800, *supra*, it was the duty of such court to comply with the laws and usages of the statutes of Oklahoma in empanening the jury, in so far as such laws and usages do not conflict with United States statutes.

In the case of the *United States v. John Bailey* 9 Pet. 238, the Supreme court had under consideration a question as to whether or not perjury could be assigned upon a false affidavit taken before a magistrate, authorized to administer oaths, in pursuance of a regulation,

26

or in conformitory of the usages of the treasury depart-
ment.   In that case it was admitted that there was no
statute of the United States which expressly author-
ized any justice of the peace of a state, or any officer
of the national government, judicial or otherwise to
administer the oath.   But it was shown that the secre-
tary of the treasury had established a regulation, au-
thorizing affidavits made before any justice of the peace
of a state, to be considered in proof of claims.   And
in discussing the provisions of an Act similar to § 5392
under consideration, the court says:

"And we think that such an oath, administered un-
der such circumstances, would clearly be within the
provisions of the Act of 1823. That Act does not create
or punish the crime of perjury, technically considered.
But it creates a new and substantive offense of false
swearing and punishes it in the same manner as per-
jury.   The oath, therefore, need not be administered
in a judicial proceeding, or in a case of which the state
magistrate, under the state laws, had judicial jurisdic-
tion, so as to make the false swearing perjury.   It will
be sufficient that it might be lawfully administered, by
the magistrate, and was not in violation of his official
duty."

It will be seen from the foregoing quotation that the
section under consideration has a broader significance
than that usually accorded to it.   That a prosecution
under the same may be had, when the oath is lawfully
administered, by an officer who does not act in viola-
tion of his official duty.

No express authority having been given by any law
of the United States for administering the oath in the
case under consideration, the question presented is, did
the court have an implied power to require the defend-
ant to take an oath when examined upon his *voir dire?*
If such power exists in the court, it must follow that if
the defendant swore falsely he could be prosecuted
under § 5392.

In the case of the *United States v. Bailey, supra*, in discussing the implied power of officers to administer oaths, the court says :

" It is a general principle of law, in the construction of all powers of this sort, that where the end is required, the appropriate means are given."

In the case under consideration, the court was clothed with the power to try the issue joined. Necessarily incident to a proper trial of the cause was the impaneling of the jury ; the examination touching their qualifications to sit as jurors to try such cause, and all steps usually taken to preserve to the defendant a trial by a jury of fair and impartial men. The impartiality of the jurors must be determined as an incident to an impartial trial, to the accomplishment of which end the court is bound. In order to more certainly determine who the proper men were to sit as jurors in the case, it became necessary for the court to exercise the power of compelling the jurors to truthfully answer questions touching their interest in the result of the cause. For that purpose the oath was lawfully administered under the direction of the court to the defendant in this case.

But we do not rest our judgment entirely upon the case of the *United States v. Bailey, supra,*. In the case of the *United States v. Nickerson*, 17 Howard 204, and in *Territory v. Weller*, 2 N. M. 470, the same principle is affirmed.

We therefore find that both by the language of § 800, R. S. of the United States, as well as by a power incident to the court which tried the cause, the oath upon which the perjury is assigned was lawfully administered. And that the giving of false testimony in his examination touching his qualifications to sit as a juror is an indictable offense under the law.

The last mentioned ground for reversal, is not urged in the brief of the plaintiff in error, and we have no means of determining in what particular counsel assumed that the court erred in refusing to grant a continuance upon the application of the defendant. An examination of the transcript fails to disclose material error upon the part of the court, and we must conclude, therefore, that the objection urged is not well taken.

The judgment of the lower court is affirmed.

All the justices concurring,